IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| ROLAND BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:04-22347-RBH-BM |
| v. | ) | |
| | ) | |
| AGY HOLDING CORP. (AGY), | ) | |
| FORMERLY, OWENS-CORNING | ) | **REPORT AND RECOMMENDATION** |
| FIBERGLASS CORP., THEN | ) | |
| ADVANCED GLASSFIBER | ) | |
| YARNS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Plaintiff also asserts two state law causes of action: breach of contract and breach of contract accompanied by a fraudulent act.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 23, 2005. Plaintiff filed a memorandum in opposition to the motion on June 9, 2005, and Defendant filed a supplemental memorandum in support of its motion on December 16, 2005. Defendant's motion is now before the Court for disposition.[1]

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

## Background and Evidence[2]

The Defendant is a glass fiber production facility located in Aiken County, South Carolina. Plaintiff is an African-American who began working for the Defendant as a maintenance mechanic in 1983. All totaled, there were sixteen (16) mechanics, nine (9) of whom were white and seven (7) of whom were black. Garvin Affidavit; Brewer Affidavit.

Since 1998, Plaintiff worked in the Saco-Lowell[3] area of the Defendant's plant pursuant to his request. Plaintiff testified that in 1998 he was diagnosed with sleep apnea, and that he requested placement in the Saco-Lowell area because it was cooler and not as dusty as the furnace area, where he had worked previously. Plaintiff's Deposition, pp. 23-24. Eddie Garvin (Caucasian) started supervising the mechanics in December 2002. His supervisor was Gary Brewer (Caucasian). Garvin Affidavit; Brewer Affidavit.

Brewer attests in an affidavit that he encouraged periodic reassignment among the employees so that no one became stagnant and all would be knowledgeable on all of the machinery in their areas. Brewer Affidavit. In January 2003, Garvin reassigned thirteen (13) of the maintenance mechanics to new assignments, including the Plaintiff, who was reassigned to the Baco area. Garvin Affidavit; Brewer Affidavit; Defendant's Exhibits C & D.[4] Garvin attests that the

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]"Saco-Lowell" is the name of the machines or frames which prepare the Defendant's product for shipping. Brewer Affidavit; Garvin Affidavit. Plaintiff was responsible for maintenance of the Saco-Lowell frames.

[4]"Baco" was the name of another framing machine. The Saco-Lowell area and the Baco area are in the same room at the plant. Brewer Affidavit; Garvin Affidavit.



three (3) employees who were not reassigned, George Miles (African-American), Jimmy Starling (African-American), and Gene Mobley (African-American), were not reassigned because he believed they would be best utilized where they already were. Garvin Affidavit.

Following his reassignment, Plaintiff began to have difficulty breathing and reported this condition to his supervisors. Plaintiff's Deposition, p. 30. Plaintiff testified that the Baco area exacerbated his condition, as it was hotter and dustier than the Saco-Lowell area. Plaintiff's Deposition, p. 32; see also Tyler Deposition, pp. 34-35; Defendant's Exhibit C, D & E. However, when Plaintiff went to see the nurse (Ann Tyler), he was advised that his medical file reflected that he had been released to return to work without restrictions by his physicians in both 1998 and 1999. See Defendant's Exhibits A & B; see also Tyler Deposition, pp. 120-121. Plaintiff then obtained a letter from his physician (Dr. Preston Conger) on February 29, 2003 which stated that he should not be exposed to higher temperatures and higher fiber content, which Plaintiff contends were present in the Baco area. Defendant's Exhibit F; see also Plaintiff's Attachment 1. Nurse Tyler wrote to Dr. Conger to obtain more information, but never got a response. Tyler Deposition, pp. 47, 130; Defendant's Exhibit G.

Plaintiff was not transferred, and continued working on the Baco frames until May 2003. Defendant's Exhibit E. In May 2003, Plaintiff was diagnosed with hypoxemia, a condition which causes low blood oxygen, by Dr. Nicholas Sanito. Plaintiff's Deposition, p. 31; see Plaintiff's Attachment I. Dr. Sanito advised that Plaintiff should not be placed in work settings that were excessively hot, humid, or dusty. Id. After receipt of Dr. Sanito's opinion, Plaintiff was placed on medical leave.

Defendant contends that the entire plant is potentially hot and humid, and that it was



necessary to place Plaintiff on medical leave until they could obtain further information from Dr. Sanito. See Defendant's Exhibits H, I, J & M; Tyler Deposition, pp. 56, 67, 72, 85-86; Plaintiff's Deposition, pp. 34-35. During his medical leave, Plaintiff filed a grievance with his union over the Defendant's alleged failure to accommodate him and his claims of discrimination. Plaintiff's Attachment II. During this period, Defendant also received additional correspondence from Dr. Sanito stating that he was not disabled and was capable of work, although he should avoid hot, humid and dusty areas of the plant. See Defendant's Exhibits K, L, N, O & Q; Plaintiff's Attachment I.

Tyler had heat and humidity ratings taken in the Saco-Lowell and Baco framing areas to determine the amount of heat and humidity in those areas. Tyler Deposition, pp. 58, 137-138, 143; Defendant's Exhibit X.[5] These heat and humidity readings were presented to Dr. Sanito, who opined on September 8, 2003 that the readings were "quite reasonable". Defendant's Exhibits U, X & Z. Plaintiff was then advised that he should report back to work on October 1, 2003. Defendant's Exhibit AA. When Plaintiff returned to work, he was again placed in the Baco area, where he continues to work. Plaintiff's Deposition, pp. 40, 97-98. No further action was taken on Plaintiff's union grievance.

Plaintiff then filed an administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 23, 2003, alleging that he was discriminated against on the basis of his race and age when he was reassigned to the Baco area. Defendant's Exhibit BB. After receiving a right to sue letter, Plaintiff filed this lawsuit in United

[5]There apparently was no issue about dust being a problem in the frame area. Tyler Deposition, pp. 47, 60, 130, 135-136, 151-152; see also Defendant's Exhibit Y.



States District Court.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Federal Discrimination Claims)

Plaintiff's discrimination claims are for disparate treatment, based on his allegations that he was involuntarily reassigned by the Defendant because of his race and age in violation of Title VII and the ADEA. Disparate treatment cases require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not offered any direct evidence of either race or age discrimination.[6] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claims, as direct

[6]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).



proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[7]

The United States Supreme Court articulated a three-part procedure for analyzing discrimination cases in McDonnell Douglas. First, the Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's age and/or race. Despite these shifting burdens of production, however, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr., 113 S.Ct. 2742, 2747 (1993); Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 398 (7th Cir. 1997).

Both parties have set forth essentially the same prima facie case for evaluation of

[7]Consideration of Plaintiff's claims under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, both parties have argued Plaintiff's claims only under the traditional McDonnell Douglas proof scheme.



Plaintiff's claims[8]. Under this prima facie case, Plaintiff must show that 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was performing his job at a level that met his employer's legitimate expectations at the time of the adverse employment action; and 4) following his transfer his previous position remained open or was filled with someone from outside of his protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004); Dugan v. Albemarle County Sch.Bd., 293 F.3d 716, 721 (4th Cir. 2002). It is undisputed that Plaintiff is a member of a protected class (African-American and over forty years of age[9]) with respect to both his race and age claims. Defendant also does not contest for purposes of summary judgment that Plaintiff was adequately performing his job, or that upon Plaintiff's transfer to the Baco area, his previous maintenance position in the Saco-Lowell area was filled by a younger Caucasian, Rusty Todd,[10] and later by two other younger Caucasian males, Larry Proctor and Bud Dampier. Plaintiff's Deposition, pp. 46-48[11]; Garvin Affidavit, Exhibit A.

Defendant does argue, however, that Plaintiff has failed to establish his prima facie

---

[8]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Education Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

[9]The ADEA applies to individuals who are at least forty (40) years of age. 29 U.S.C. § 631(a).

[10]Rusty Todd was forty (40) years of age at the time of Plaintiff's transfer. Garvin Affidavit, Exhibit A.

[11]At the time of Plaintiff's reassignment, he was in his fifties. Plaintiff's Deposition, p. 6; Garvin Affidavit. The exact ages of Proctor and Dampier have not been provided to the Court. However, as the Defendant has not contested that these individuals were both younger than the Plaintiff, the undersigned has assumed Plaintiff's establishment of the fourth prong of his prima facie case as noted above.



case because he has failed to present any evidence to show that he was subjected to an "adverse employment action" as that term has been defined in the applicable caselaw. After careful consideration of the evidence and arguments presented, the undersigned is constrained to agree. Indeed, the very case cited by the Plaintiff as support for his claim, Von Gunten v. Maryland, 243 F.3d 858 (4th Cir. 2001), requires dismissal of Plaintiff's claim. In Von Gunten, the Court held that an adverse employment action is an action that affects the "terms, conditions, or benefits" of a Plaintiff's employment. Von Gunten, 243 F.3d at 865-866.[12] Hence, any personnel action which meets this standard will constitute an adverse employment action for purposes of a Title VII or ADEA claim. Among the Plaintiff's claims in Von Gunten was that she had been improperly reassigned, a claim similar to the one made by the Plaintiff in the case at bar. Also like the Plaintiff here, the Plaintiff's reassignment in Von Gunten did not result in a decrease in pay, benefits or job title. However, the plaintiff in Von Gunten nevertheless asserted that her reassignment constituted an adverse employment action because, among other reasons, it exposed her to dangerous pathogens and subjected her to less appealing working conditions. In evaluating this claim, the Von Gunten court held that a job reassignment which resulted in the employee being exposed to more dangerous conditions could, under appropriate circumstances, meet the standard of an adverse employment action. This of course is the claim made by the Plaintiff here. However, the Von Gunten court nevertheless upheld the District Court's grant of summary judgment in that case, as it found that Von Gunten had failed to proffer any credible evidence that

[12]The Court in Von Gunten was reviewing a claim of unlawful retaliation. However, the Court held that the same standard is used when evaluating discrimination claims. Von Gunten, 243 F.3d at 865 ["[C]onformity…is to be preferred"]; citing Ross v. Communications Satellite Corp., 759 F.2d 355, 366 (4th Cir. 1985).



her reassignment did in fact increase her exposure to dangerous pathogens. Id. Plaintiff's claim in the case at bar suffers from this same defect.

Plaintiff alleges that the Baco area had higher levels of heat and humidity than the Saco-Lowell area, which resulted in his having difficulty breathing due to his diagnosed sleep apnea and hypoxemia. Plaintiff's Deposition, pp. 31-32. However, he has provided no evidence to support this claim. The evidence presented to this Court shows that the Baco and Saco-Lowell frame areas were located in the same room, with the frames being within five (5) feet of each other. Brewer Affidavit, Garvin Affidavit. While Plaintiff argues that the releases he obtained from his physicians support his position that working in the Baco area adversely affected his health, and that he should have been transferred back to the Saco-Lowell area, that is not what this medical evidence shows. The letter provided by Dr. Conger on February 28, 2003 states only that, due to Plaintiff's condition, "it probably would be best if his lungs were not exposed to any increased irritants related to high temperature or higher fiber exposure....". See Plaintiff's Attachment I. Dr. Conger did not know, and of course was in no position to judge, whether working in the Baco area would subject Plaintiff to these conditions. Rather, he simply states that that is what the Plaintiff had told him. Id. Similarly, while the correspondence from Dr. Sanito also indicates that Plaintiff should "avoid being placed in work settings that [are] excessively hot, humid, or dusty....", as with Dr. Conger, Dr. Sanito did not himself know what the working conditions were in the Baco area versus the Saco-Lowell area of the Defendant's plant, or whether either of these areas were appropriate or inappropriate for Plaintiff to work. To the extent Dr. Sanito recommends that Plaintiff be transferred back to the Saco-Lowell area, he makes clear that this recommendation was based on the Plaintiff's own report to Dr. Sanito of the differences between



the two areas. Id.

The record further shows that when Dr. Sanito was presented with the actual temperature and humidity readings from the various areas of the plant derived from the studies conducted by the Defendant, which readings included the Baco area, Dr. Sanito opined that "[t]hese readings strike me as being quite acceptable, as the average temperatures and humidity readings seem to be fairly moderate." Id [Letter of September 18, 2003]. In fact, contrary to Plaintiff's conclusory statements in his deposition, the studies conducted actually reflect that the Saco-Lowell area had *higher* average temperature and humidity readings than did the Baco area. Garvin Affidavit, ¶¶ 36-37; Brewer Affidavit, ¶¶ 36-37; see Defendant's Exhibit X. The only reason Dr. Sanito then went on to express a concern about Plaintiff remaining in the Baco area was because Plaintiff told him that the Baco area also had a high content of fibers in the air, an issue not addressed by the temperature and humidity studies. However, a separate study did address this issue, and there is no evidence in that report to support Plaintiff's claim that the Baco area had a high fiber concentration while the Saco-Lowell area did not (which is what Plaintiff told Dr. Sanito). See Defendant's Exhibits Y and Z. To the contrary, with respect to any fiber content in the air, the evidence shows that the plant meets OSHA standards and that workers are not required to wear any type of protection while working because any fiber or dust content in the air is below permissible exposure limits as set by OSHA. Tyler Deposition, pp. 47, 60, 130, 135-136, 151-152; see also Defendant's Exhibit Y; Garvin Affidavit, ¶¶ 34-35; Brewer Affidavit, ¶¶ 34-35.

Further, even if Plaintiff's argument is that he should not be exposed to *any* dust or fiber levels, even if they are below OSHA standards, Plaintiff has failed to present any evidence to show that there is any difference in these levels between the Baco and Saco-Lowell areas.



Plaintiff cannot create an adverse employment action by claiming that his reassignment placed him in a more dangerous job due to his medical condition without providing any evidence that this is in fact what occurred. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) [conclusory statements without evidentiary support insufficient to create genuine issue of fact]; *cf.* Glover v. Lockheed Corp., 772 F.Supp. 898, 901 (D.S.C. 1991) [summary judgment granted where Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was discriminated against]. Therefore, having failed to show that his reassignment constituted an adverse employment action, Plaintiff has failed to establish his prima facie case, and his discrimination claims are subject to dismissal.[13]

Additionally, even if the Court were to conclude that Plaintiff has established his prima facie case of discrimination, the Defendant has set forth a legitimate, non-discriminatory reason for his reassignment, and Plaintiff has failed to present any evidence of pretext with respect to that decision. To establish pretext, the evidence must show that "but for" Plaintiff's employer's

---

[13]In his brief opposing summary judgment, Plaintiff argues an alternative theory that his placement on temporary medical leave constituted an adverse employment action, thereby satisfying the final prong of his prima facie case. Plaintiff's placement on medical leave, of course, occurred separately from his reassignment (the claim presented in Plaintiff's Complaint), and several months later. Even assuming, however, that Plaintiff's placement on medical leave could be considered an adverse employment action for purposes of a discrimination claim, there has been no evidence presented to show that Plaintiff was then replaced in his job (at that point, in the Baco frame area) by someone from outside of his protected class, or (for the reasons set forth hereinabove) that his placement on medical leave was effected under circumstances giving rise to an inference of unlawful discrimination. Therefore, Plaintiff has also failed to establish a prima facie case with respect to any claim surrounding his placement on medical leave.

intent to discriminate against him because of his age and/or race, he would not have suffered the adverse employment action. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991); Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [age and/or race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Plaintiff's contention (which the undersigned has assumed to be true for purposes of summary judgment) that upon his reassignment he was replaced in his old position by a younger Caucasian worker is not, standing alone, sufficient to evidence a discriminatory animus with respect to this employment decision. *Cf.* Finney v. Planned Parenthood of New York City, No. 02-7942, 2003 WL 22928730 at *6 (S.D.N.Y. Dec. 10, 2003) ["The filling of plaintiff's position by an individual outside of [his] protected class is not enough, absent evidence suggestive of discrimination, to satisfy plaintiff's burden at this stage."]; Gumbs v. Hall, 51 F.Supp.2d 275, 280 (W.D.N.Y. 1999), aff'd, 205 F.3d 1323 (2d Cir. 2000) ["The fact that [the person selected] is a white male [which is outside the protected class] is insufficient, by itself, to give rise to an inference of discrimination."]; Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) ["The differential treatment of [a plaintiff and someone outside the protected class] is not enough, by itself, to support judgment for [plaintiff]"]. Rather, as has previously been stated, in order to survive summary judgment Plaintiff must present evidence "sufficient for a



reasonable fact-finder to infer that the employer's decision was motivated" by his age and/or race. Plaintiff has presented no such evidence.

Specifically, Plaintiff has pointed to no evidence that either Brewer, Garvin or any other management employee of the Defendant ever made any age or race based comments, or had any age or race based animus towards Plaintiff or any other worker.[14] Rather, Plaintiff just speculates that his age or race may have been the reason for his reassignment. See Beale, 769 F.2d at 214 [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]. Further, in addition to Plaintiff not having presented any evidence of age and/or race animus on the part of supervisory personnel, the evidence shows that, with respect to the reassignments at issue (including Plaintiff's reassignment), the three maintenance mechanics who were not reassigned were all African-American, with only one, Jimmy Starling, being under fifty (50) years of age (he was forty-eight (48)). Garvin Affidavit. As for the sixteen maintenance mechanics who were reassigned, nine were white while only four were black, with all being over the age of forty (40) accept for one, who was thirty-four (34). See also Defendant's Exhibits C & D. The undersigned can discern no evidence of discriminatory motivation or animus in this evidence.

Although Plaintiff may sincerely believe that his reassignment was because of his race or age, at summary judgment the non-moving party has an obligation to present evidence to save his allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[14]With respect to the age issue, the evidence reflects that both Brewer and Garvin are in their fifties, roughly the same age as the Plaintiff. Garvin Affidavit; Brewer Affidavit.



(1986); Gairola v. Virginia Dep't of General Servs, 753 F.2d 1281, 1288, n.4 (4th Cir. 1985). Plaintiff has failed to present this Court with facts or evidence sufficient to meet this standard, and the Defendant's motion for summary judgment with respect to his federal discrimination claims should therefore be granted.

**II.**

**(Contract Claims)**

In his third and fourth causes of action, Plaintiff alleges claims for breach of contract and breach of contract accompanied by a fraudulent act. While presented as state law claims, Plaintiff notes in both of these causes of action that his contract with the Defendant is governed by the collective bargaining agreement (CBA) between the Defendant and his union, and alleges that the Defendant's conduct violated its obligations under the CBA. Complaint, at ¶¶ 30-31, 35-36.

Defendant argues that Plaintiff's state law contract claims are subject to dismissal on the grounds of federal preemption under the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, et. seq.. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393-394 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985); Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405-406 (1988) ["[I]f the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law…is preempted"]; Willis v. Reynolds Metals Co., 840 F.2d 254 (4th Cir. 1988). Defendant further argues that, even if Plaintiff is actually attempting to bring his contract claims under § 301 of the LMRA (which provides for a federal cause of action in federal court), that prior to bringing any such claim Plaintiff must have first exhausted his grievance and arbitration remedies under the collective bargaining agreement, which Plaintiff failed to do. See DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163-



164 (1983);[15] Baker v. Farmer's Elec. Coop., Inc., 34 F.3d 274, 284 (5th Cir. 1994). It is undisputed in the record that the grievance process provided for in the CBA in this case was not completely exhausted. See Defendant's Exhibit FF (Collective Bargaining Agreement), Article 6.

In response to Defendant's arguments, Plaintiff argues that he is not prohibited from bringing his contract claims in this Court because the existence of the CBA does not waive Plaintiff's right to pursue federal claims of employment discrimination in a judicial forum, citing to Wright v. Universal Meritime Service Corp., 525 U.S. 70, 81-82 (1998). See also Carson v. Giant Food, Inc., 175 F.3d 325, 331-332 (4th Cir. 1999). However, assuming Plaintiff's argument on this issue to be correct, the Defendant is not attempting to prohibit Plaintiff from pursuing his discrimination claims. To the contrary, those claims have been addressed on the merits both by the Defendants and by this Court. See discussion, supra. Rather, the issues addressed in Plaintiff's two contract causes of action involve whether or not the Defendant violated the collective bargaining agreement's provisions with respect to seniority preference and reassignment of employees. Complaint, at ¶¶ 29-36.

Hence, to the extent Plaintiff's claims are based on discrimination, they have been heard, but Plaintiff has offered no argument or rationale as to why his claims which are not grounded in discrimination should be heard by this Court in light of his failure to exhaust his administrative remedies and the cited caselaw, nor can the undersigned find such a reason in the

---

[15]While Plaintiff could possibly pursue his contract claims, notwithstanding his failure to exhaust his grievance remedies, if his union had somehow engaged in improper conduct, Plaintiff has made no such allegations in his Complaint, or in his memorandum opposing summary judgment. See DelCostello, 462 U.S. at 164-165.



cited caselaw. Therefore, Plaintiff's contract claims should be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed.**

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January 19, 2006

